UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JIANMIN YU,

*Petitioner*,

– against –

RAUL MALDONADO, JR., in his official capacity as Warden, Metropolitan Detention Center,

*Respondent*.

**MEMORANDUM & ORDER**
26-cv-06079 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Petitioner Jianmin Yu is a native of China who has resided in the United States since 2001. Pet. 3, ECF No. 1.[1] Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officers on July 4, 2026. Pet. 4. Petitioner has been detained in ICE custody since his arrest. Pet. 4. He is currently being held in the Metropolitan Detention Center ("MDC"). Pet. 4.

On September 30, 2026, petitioner filed a petition for a writ of habeas corpus before this Court. Pet. That petition seeks an order requiring respondent to identify and the Court to confirm the "authority supporting [petitioner's] present detention, the applicable removal[ ]period calculation, and compliance with the legal requirements governing continued custody." Pet. 6; Reply 6–7, ECF No. 7. After reviewing the record, the Court concludes that petitioner's detention is permissible in light of his imminent

[1] Because the Petition contains duplicative paragraph numbers, the Court refers instead to its page numbers. Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

removal to China under an administratively final order of removal. Accordingly, the petition is DENIED.

**BACKGROUND**

Petitioner arrived in the United States in 2001. Pet. 3. On May 18, 2011, he was ordered removed. Pet. 4. He appealed that removal order to the Board of Immigration Appeals ("BIA"), and his appeal was dismissed on December 12, 2012. Pet 4. He did not seek judicial review of that decision. *Cf.* Pet. 4 (mentioning no petition for review). Accordingly, his order of removal became final upon that dismissal. *See Jhagroo v. Immigr. Ct.*, No. 19-cv-3689, 2019 WL 6051444, at *2 (S.D.N.Y. Nov. 13, 2019).

Despite that final order of removal, petitioner continued to live freely in the United States for over a decade. Pet. 4. During that time, he raised a U.S.-born son, purchased home with a mortgage, and paid taxes here. Pet 4. He maintains that at no point did ICE ever "instruct[] him to report for a check-in or other reporting appointment before his arrest on July 4, 2026," Pet. 4, and the government has not contested that characterization, *see generally* Resp., ECF No. 6.

Neither petitioner nor the government has indicated whether petitioner received any kind of individualized detention assessment prior or subsequent to his arrest and current detention. *See generally* Pet., Resp., Reply. However, the government has provided a Chinese travel document in petitioner's name dated September 4, 2026, Exhibit A to Resp. ("Travel Document"), ECF No. 6-1, and it submits that ICE is "in the process of scheduling a commercial flight for later this month" to effectuate petitioner's removal. Resp. 2. Accordingly, the government maintains that "the only legal barrier to removal of Petitioner here is the Court's order staying removal" and that this Court thus lacks jurisdiction over the instant petition. *See* Resp. 2 (comparing this case to *Toalombo-*

*Perez v. Blanche*, No. 26-cv-04812, 2026 WL 2676626, (E.D.N.Y. Sept. 11, 2026), in which this Court denied the Petition as jurisdictionally barred due to petitioner's imminent removal); *see also* Scheduling Order 1–2, ECF No. 4 (enjoining petitioner's removal pending the final disposition of the instant petition). Petitioner responds that he seeks to challenge the statutory basis for his continued detention, not the validity of his removal order, and thus his petition falls within this Court's jurisdiction. Reply 3–4.

## DISCUSSION

### I. Jurisdiction

"Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439, (2007). In *Toalombo-Perez*, this Court held that it lacked jurisdiction over a petition where "petitioner ha[d] not identified any statutory or constitutional defect with the manner of his arrest and detention" and "respondents ha[d] provided documentary evidence that [his] removal [was] imminent." 2026 WL 2676626, at *2. That record meant that the "substance" of the relief petitioner sought "amount[ed] to an attack on [his] order of removal"—an attack over which this Court lacked jurisdiction under 8 U.S.C. § 1252(g) (depriving district courts of jurisdiction to review the government's decision to execute removal orders) and 8 U.S.C. § 1252(a)(5) (providing that petitions for review filed in the appropriate court of appeals is the "sole and exclusive means for judicial review of an order of removal"). *Id.* The Court accordingly dismissed the petition. *Id.*

The government argues that this Court similarly lacks jursdiction over the petition in this case. *See* Resp. 2 (comparing this case to *Toalombo-Perez*, 2026 WL 2676626). However, here, petitioner makes clear that he seeks to challenge "the legal and constitutional grounds for his continued physical confinement and adequacy of the

procedures governing that confinement," rather than his removal itself. *See* Reply 2–3. And indeed, courts in this circuit have readily reviewed similar challenges to the government's detention authority under 8 U.S.C. § 1231. *See, e.g.*, *Singh v. Maldonado*, No. 26-cv-02438, 2026 WL 1557449, at *1 (E.D.N.Y. June 2, 2026) ("Because Singh challenges his ongoing detention [under Section 1231], not his removal order, we turn to the merits."); *Diallo v. Joyce*, 817 F. Supp. 3d 202, 208 (S.D.N.Y. 2025) (holding Section 1231 did not authorize petitioner's hearing-less and indefinite detention, even though her removal order was administratively final). Thus, because petitioner, like the petitioners in *Singh* and *Diallo*, challenges his detention rather than his removal, the Court concludes it has jurisdiction to review that challenge.

## II. Petitioner's Detention under 8 U.S.C. § 1231

Moving to the merits, however, the Court finds that the government has sufficiently demonstrated that petitioner's removal is imminent, authorizing his current detention for the purpose of effecting that removal.

Petitioner and the government agree that because petitioner is subject to a final order of removal, his detention is governed by 8 U.S.C. § 1231. The "basic purpose" of that provision is to accomplish the noncitizen's removal. *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Detention during the removal period is mandatory. *Id.* § 1231(a)(2). However, "[a]fter the ninety-day removal period, 'the Government may continue to detain an alien who still remains here or release that alien

under supervision.'" *Singh*, 2019 WL 4415152, at *4 (quoting *Zadvydas*, 533 U.S. at 683).[2] ICE regulations govern that continued detention decision. *See* 8 C.F.R. § 241.4. Absent judicial review of the removal order or the petitioner's detention for reasons unrelated to his immigration case, the removal period begins "[t]he date the order [of removal] becomes administratively final." *Id.*; 8 U.S.C. § 1231(a)(1)(B).

Where a noncitizen has *not* been detained as required during the removal period, despite the statute's clear directive that such detention is mandatory, at least one court in this circuit has held that Section 1231 does not generally authorize their future hearing-less detention. *See Diallo*, 817 F. Supp. 3d at 208. Nevertheless, that court and others have recognized that when a noncitizen's removal is "imminent," the government's right to remove that noncitizen nevertheless implicitly authorizes it to briefly detain the noncitizen "for purposes of effecting that removal." *Id.*; *see also Romero v. Noem*, No. 26-cv-01884, 2026 WL 775847, at *5 (S.D.N.Y. Mar. 19, 2026) (holding similarly).

When determining whether a petitioner's removal is imminent, the presence or absence of travel documents and arrangements has been decisive in multiple habeas cases in this circuit. For example, in *Toalombo-Perez*, this Court held that the travel documents provided by the government—both travel authorization and flight tickets scheduled to effectuate his removal to Ecuador—indicated that his removal was imminent. 2026 WL 2676626, at *2.

In *Singh v. Maldonado*, another court in the Eastern District of New York denied the petitioner's due process-based challenges to his detention because the government was in possession of the travel documents necessary to effectuate the petitioner's removal

---

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

and represented that it would be able to book petitioner's return flight "within three weeks" of the court's decision. No. 26-cv-02438, 2026 WL 1557449, at *2 (E.D.N.Y. June 2, 2026). The petitioner had challenged his continued detention on the basis that his removal was not foreseeable. *Id.* However, once the government produced the travel documents, the court held that "removal [was] more than likely to occur in the 'reasonably foreseeable future' — it [was] 'imminent'" and thus authorized petitioner's detention. *Id.*

And in *Romero v. Noem*, a court in the Southern District of New York likewise held that the petitioner's detention was authorized under Section 1231, regardless of the expiration, or not, of the removal period, given the government's possession of the necessary travel documents. No. 26-cv-01884, 2026 WL 775847, at *5 (S.D.N.Y. Mar. 19, 2026). The court observed that "[t]he Government indisputably ha[d] authority to remove Petitioner," an authority which "necessarily implies the authority to briefly detain the [person] for purposes of effecting th[at] removal." *Id.* Because the government had "represented that it had obtained all necessary travel documents for Petitioner's removal to his country of origin and that the only impediment to Petitioner's removal was th[e] [c]ourt's order" enjoining petitioner's removal during the pendency of his habeas case, the court concluded that there was "no reason to believe his detention was for any purpose other than his imminent and lawful removal to his country of origin." *Id.* *5, *5 n.1.

ICE regulations relating to post-removal period detention decisions under Section 1231 also focus on the availability of travel documents. *See* 8 C.F.R. § 241.4. Under "criteria for release," the first factor to be considered in favor of release is if "[t]ravel documents for the alien are not available or . . . immediate removal . . . is otherwise not practicable." *Id.* § 241.4(e)(1); *see also Zhang v. Genalo*, 814 F. Supp. 3d 307, 325 (E.D.N.Y. 2025) (holding petitioner's order of supervision was improperly revoked under

Section 241.4 where the government had provided no evidence of a then-current travel document supporting its contention that petitioner's removal was imminent). Thus, the availability of such documents appears to be a strong and—often determinative—indicator of a noncitizen's imminent removal.

In contrast, where the government has lacked such documentation, additional statutory authority has been required to support a petitioner's detention. In *Diallo*, for example, Judge Subrumanian held that Section 1231 did not authorize petitioner's continued detention in part because the government's ability to remove her remained largely hypothetical. 817 F. Supp. 3d at 208. There, the petitioner's removal order was over a decade old, she had never previously been detained pursuant to that order, and "the government concede[d] that it ha[d] no idea (1) whether removal [was] possible given [her] withholding of removal to Guinea, (2) where it could remove her to, and (3) when that might happen." *Id.* Noting that Section 1231 "provides for a limited, ninety-day period of mandatory detention authority, and it is clear about when that period begins and ends," the court in *Diallo* found that the statute did not provide the government "a right to arrest and detain people at any time, for any or no reason" when detention and supervision had not occurred as required during that period and removal was far from certain. *Id.* at 207.

There are multiple aspects of that decision analogous to the circumstances here. For example, here, as in that case, the petitioner appears never to have been detained during the removal period following the BIA's dismissal of his appeal. *Compare id.* at 204–05 ("Diallo was *never* detained during the removal period, and she was *never* given an order of supervision at the end of it."), *with* Pet. 4 (noting that at no point did ICE ever "instruct[] [petitioner] to report for a check-in or other reporting appointment before his

arrest on July 4, 2026”). And here, as there, petitioner was precipitously arrested pursuant to a decade-old removal order without apparent individualized process to support that detention. *Compare Diallo*, 817 F. Supp. 3d at 204 with Pet. 4.

However, the court in *Diallo* was careful to state that “nothing in [its] holding says that the government may not remove [the petitioner] or that, if removal were *imminent*, the government could not briefly detain [her] for purposes of effecting that removal.” *Diallo*, 817 F. Supp. 3d at 208. And, like the court in *Romero*, it noted that “a detention of that kind might reasonably be thought of as implicit in the concept of ‘removal’ itself.” *Id.*

That observation clearly distinguishes the case at hand, where the government has provided a Chinese travel document in petitioner’s name, submits that ICE is “in the process of scheduling a commercial flight for later this month” to effectuate petitioner’s removal, and maintains that “the only legal barrier to removal of Petitioner here is the Court’s order staying removal.” Resp. 2. Petitioner has identified no basis to contest those representations. *See* Reply (noting only that the government misstated the date printed on the Travel Document in its Response). He merely asks the Court to order the government to provide additional details about his planned removal. Reply 7. However, the details already provided—the travel document and rough timeline for removal, measured in weeks or days, rather than months—have previously been accepted by courts in this circuit as sufficient to demonstrate the imminence of removal. *See, e.g.*, *Toalombo-Perez*, 2026 WL 2676626, at *2; *Singh*, 2026 WL 1557449, at *2. And indeed, as noted above, they are the first factors considered in the relevant regulations related to ICE’s own detention determinations. *See* 8 C.F.R. § 241.4(e)(1).

Thus, the Court concludes that petitioner's imminent removal pursuant to a valid and administratively final removal order renders his brief detention "for purposes of effecting that removal" permissible here. *Diallo*, 817 F. Supp. 3d at 208. Accordingly, his petition must be denied.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is denied. However, given that this decision is premised on the imminence of petitioner's removal, that denial is without prejudice to renew the petition before the appropriate district court should he not be removed by November 28, 2026. *See Singh*, 2026 WL 1557449, at *2.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: October 29, 2026
Brooklyn, New York